Lee, J.
On the 26th of June 1851 the plaintiff in error Anglea was convicted in the Circuit court of Lynchburg of murder in the second degree, and the term of his imprisonment in the penitentiary was ascertained by the jury to be five yearn; and on the 28th of June 1851 sentence was passed upon him by the court accordingly. On the 81st of December 1851 a pardon was granted him by the then executive of the commonwealth, in which it was declared that the governor had thought proper “to pardon the said Joseph Anglea for the crime and conviction aforesaid, hereby releasing him from all pains, penalties or forfeitures that might or would have been inflicted on him had these letters of pardon not been made.” Previously to the emanation of this pardon, however, the clerk had taxed the expenses of prosecution, and-had issued an execution for the same as the law *697 directed. This execution was dated on the 21st of July 1851, and was returned by the sergeant of Lynchburg, “ No effects.” On the 11th of February 1852, after the pardon had been granted, another execution issued and was placed in the hands of the sergeant for collection. In his taxation of the expenses recoverable by the commonwealth, the clerk had included certain fees which he supposed were due to himself, to the clerk of the Hustings court, to the sergeant and to the attorney for the commonwealth in both the Hustings court and the Circuit court, amounting in the whole to the sum of thirty dollars and forty-five cents; and he made an endorsement to that effect upon the execution, specifying the amount due to each. The sheriff to whom this last execution was directed, levied the same upon property of the said Anglea; and he thereupon gave a delivery bond with the other plaintiff in error, "William Ferguson, as his security. In computing the amount for which this bond should be taken it appears that the sheriff by mistake added the sum endorsed on the execution as payable to the different officers, to the amount of the execution, and took the bond for the whole, including also a commission on the said sum of thirty dollars and forty-five cents. The bond having been forfeited, a motion was made in the Circuit court of Lynchburg for award of execution thereon. The defendant appeared to contest said motion, and moved the court to quash the execution and bond upon the ground that the former had been illegally and irregularly issued, and the latter improperly exacted. The court, however, overruled the motion to quash, and awarded execution for the sum of four hundred and fifty-three dollars and thirty-seven cents, (the whole amount named in the bond,) with interest thereon from the 24th of February 1852 till paid and costs. The defendants *698 thereupon excepted to the opinion of the court, setting &rth the facts before stated by way of an agreed case: And it also appeared from the exception, that the attorney for the commonwealth in the Circuit court had released so much of the delivery bond as ^ embraced the said sum of thirty dollars and forty-five cents, and the commission charged thereon. To this judgment a supersedeas has been awarded from this court.
It is laid down in 7 Bac. Ab. (Phila. ed. of 1846,) p. 416, title “Pardon,” letter H, that a pardon whether by the king or act of parliament removes not only the punishment but all the legal disabilities consequent on the crime. And in 2 Russ, on Crimes 975, the doctrine is stated in nearly the same terms. But it is manifest that it could not be intended to convey the idea that a pardon was equivalent in effect to a reversal of the judgment of conviction, and removed all the consequences of the crime and the conviction; becanse we know that in a variety of instances the effects of the conviction remain notwithstanding the pardon. Thus a pardon will not cure the corruption of blood under the English law caused by an attainder of treason or felony; nor will it relieve a forfeiture either of lands or goods arising upon such' attainder. 2 Hawk. P. C. 549, sect. 54, 57; 7 Bac. Ab. 418. So if a man have been attainted of felony and afterwards pardoned, yet he shall not be sworn of an inquest, for that he is not probus et legalis homo. Brown v. Crashaw, Bulst. part 2, p. 154. Lord Hale says a pardon does not always make the man honest, and therefore he shall not be a juryman. 2 Hale’s P. C. 278. So in New York, where persons adjudged to imprisonment fo],* life in the state ’son are declared “ to be civilly dead to all inte’ purposes in law”’ a pardon to a man so senh /not annul or affect a subsequent marriage 4 nor the sale of his property by *699 persons appointed to administer on Ms estate, nor divest Ms heirs of the interest acquired in his estate in consequence of such his civil death. In the matter of Doming and his children, 10 John. R. 232. So it does not restore the competency of the offender convicted of perjury; and although in case of a conviction for felony, the competency is restored, yet it is said the crime still goes to the credibility of the witness. 1 Phil. Ev. 35; 2 Stark. Ev. 721. And a pardon will never release an interest that may be acquired by a private individual in a share of the penalty incurred. United States v. Lancaster, 4 Wash. C. C. R. 64; Rowe v. The State, 2 Bay’s R. 565. Nor will it remit costs to which parties may be entitled. Ex parte McDonald, 2 Whart. R. 440. So in Massachusetts, a discharge from a former sentence in consequence of a pardon, will not protect the party against the additional punishment for a subsequent offence under the statute imposing additional punishment on convicts who had been discharged from former sentences in due course of law. Evans v. The Commonwealth, 3 Metc. R. 453. And in Virginia it has been decided that a justice of the peace who is convicted of felony, forfeits Ms office, and is incapacitated from acting under his commission ; and a pardon will neither avoid the forfeiture nor restore his capacity. Commonwealth v. Fugate, 2 Leigh 724. Other instances might be cited showing that a pardon of the offence is by no means equivalent in its effects to the reversal of the judgment.
In 1 Chit. C. L. 775, (New York ed. 1847) it is said that the effect of a pardon is to prevent the infliction of the puMshment denounced, and also to give to the defendant a new capacity, credit and character. And Judge Blackstone says its effect is to make the offender a new man, to acquit him of all corporal penalties and forfeitures, and not so much to restore his former as to give him a new credit and capacity. 4 Bl. Com. *700 402. This I think gives a more correct idea of the operation and effect of a pardon than the language used in Bacon and Russell. For in fact though it relieves the party of all penalties directly annexed to the offence, yet it does very little towards removing the other consequences of the crime.
In regard to the construction of the terms of a pardon, we find it laid down as a settled rule, that no pardon of felony shall be carried beyond its express purport. 7 Bac. Ab. 411; 2 Hawk. P. C. 535, § 12. And that a pardon at the suit of the party is to be taken more strongly against' him, but where granted mero motu, more strongly against the grantor. 17 Vin. Ab. title Prerogative, p. 19, 20, 27, 31, 36.
If the pardon in this case be tried by these rules, it cannot be made to extend to the remission of the costs of the prosecution. It was not the unsolicited act of the governor done of his own mere motion, because it was in answer to a petition that had been presented to him praying that it might be granted. It is not stated from whom the petition came, whether from the party himself or others, or from both ; but in the absence of proof to the contrary, it may be assumed that he was a party petitioning. The language of the pardon is that “ the governor has thought proper to pardon the said Anglea for the crime and conviction aforesaid, hereby releasing him from all pains, penalties and forfeitures that might or would have been inflicted on him but for the said pardon. Now, payment of the costs of the prosecution cannot be regarded as a pain, penalty or forfeiture, within the meaning of the pardon. The term “ pain” imports some bodily suffering or corporal infliction; while the terms “penalty” and “ forfeiture” are used to signify an involuntary transfer or surrender of a sum of money or of property, imposed by way of punishment for the commission of an offence against the law. Tomlin’s Law Diet, titles *701 “Penalty and Forfeiture.” But the payment of the costs of the prosecution is no part of the punishment prescribed by law for the commission of felony. It stands on a different footing from a pecuniary fine that may be imposed. The latter, when exacted, is not by way of compensation to the commonwealth for a loss or injury done by the perpetration of a criminal act. Money will not remunerate the commonwealth for the loss of the life of a citizen, or for an injury to his person or property; but the fine is imposed for the purpose of punishment, and thereby to deter the same party and others from committing similar violations. But with regard to costs it is different. They are exacted simply for the purpose of reimbursing to the public treasury the precise amount which the conduct of the defendant has rendered it necessary should be expended for the vindication of the public justice of the state and its violated laws. It is money paid, laid out and expended for the purpose of repairing the consequences of the defendant’s wrong. It is demanded of him for a good and sufficient consideration, and constitutes an item of debt from him to the commonwealth. Payment of costs is no part of the sentence of the court, and constitutes no part of the penalty or punishment prescribed for the offence. Indeed our statute expressly declares that the laws of costs shall not be interpreted as penal laws: they are to be construed as remedial statutes and liberally and beneficially expounded for the sake of the remedy which they administer. The right to enforce payment of them is a mere incident to the conviction, and thereby vested in the commonwealth for the sole purpose of replacing in the treasury the amount which the defendant himself has caused to be withdrawn from it. And it can make no substantial difference whether the money is going directly to the witnesses and others who are entitled to be paid for their services in the *702 prosecution, or the commonwealth having paid them, stands by substitution in their place. Indeed where a party having a claim that may be included in the exetion, fails to present it for the purpose in due time, it shall be disallowed. Code, ch. 210, § 12. And we have seen that a right vested either in the king or a subject shall not be divested by a pardon unless there be express words of restitution. 2 Hawk. 549, § 54. In the same book, at p. 546, the author, speaking of the effect of a pardon to discharge a suit in the spiritual court, says, that if the time to which such pardon hath relation be prior -to the award of costs to the party, it shall discharge them; and that though it be subsequent to the award of costs, yet if it be prior to the taxation of them, it shall discharge them, .because nothing appears in certain to be due for costs before they are taxed. The converse of this proposition may be inferred to be also true, that if they have been taxed, the costs shall not be discharged. And if this doctrine is applicable to costs due the commonwealth here on a conviction of felony, then the costs in this case were not affected by the pardon, as they had been taxed and an execution had issued for them before the pardon was granted.
In the case of a fine or amercement, our statute has sufficiently prevented the executive pardon from affecting the pecuniary interest of the commonwealth, by providing expressly that it shall not remit, either in whole or impart, any fine or amercement imposed by competent authority, excepting for certain contempts of court. Code of 1849, p. 106, § 20, 21. Now it can scarcely be supposed that while the legislature was thus carefully guarding against the governor’s remitting a fine of even inconsiderable amount or any portion of a fine, that it would have made no provision against his remitting the costs of prosecution which might be hundreds or thousands of dollars, if they had *703 for a moment supposed that his act of grace or exempting the individual on whom it is bestowed from the punishment the law inflicts for the crime he committed, (as expressed by Ch. Justice Marshall in United States v. Wilson, 7 Peters’ R. 150,) would also have the effect of releasing him from the obligation to reimburse the amount which had been actually paid out of the common treasury in consequence of his delinquency. This incident of a conviction for felony, we cannot but presume, was as familiar to the legislative mind as the payment of the pecuniary fine that might be assessed upon the offender; and it is not unreasonable to infer that after protecting the treasury against executive remission of pecuniary fines, great and small, it was contemplated that the whole function of a pardon would be exhausted in relieving the party from the corporal punishment and personal disabilities involved in his conviction. To extend its effect and make it operate as an acquittance for moneys due the commonwealth for expenses actually incurred and paid out of the treasury in vindication of the violated majesty of her laws, rendered necessary by the criminal act of the- party himself, would be, I think, in contravention of the spirit of the act and of the intention of the legislature.
Since the introduction of this provision into the Code, the effect of a pardon in this state seems more nearly to approach that of satisfying the exigency of the sentence in respect of the corporal punishment imposed, than that of its reversal. This last places the party in statu quo ante, (if the corporal punishment has not been undergone,) as if such a judgment had never been rendered. But neither undergoing the corporal punishment nor a pardon of the crime operates to such an extent. By both, the party is restored to his personal liberty, and his competency as a witness 'is re-established; but neither takes away the guilt or *704 washes out the moral staiu; for as we have seen, the clime still goes to his credibility, of which the jury judge; and in cases of conviction for perjury, neither restores even the competency as a witness. Neither now releases from the payment of any pecuniary fine that may have been assessed, still less, as I think, from the costs and expenses actually incurred and paid out of the treasury in bringing the offender to justice. If a case should occur in which justice requires that these should be remitted, the appeal should be made to the legislative authority to which the pecuniary interests of the commonwealth are properly confided. I think therefore the Circuit court did not err in holding the pardon shown in evidence in this case, to be no sufficient answer to the demand of the commonwealth.
But I am of opinion that the Circuit - court did err in the amount for which judgment was given. It clearly appeared that the sheriff who levied the execution and took the forthcoming bond, by mistake included in the amount for which it was taken, the fees which were endorsed upon the execution by the clerk, and included in the amount for which it issued; and indeed the attorney for the commonwealth in the Circuit court, convinced of the error, released the amount of those fees and the commission which the sheriff had charged thereon. But I am further of opinion that the clerk of the Circuit court erred iu including those fees in the execution. The act provides (Code of 1849, p. 783, § 11,) that in every criminal case, the clerk of the court in which the accused is convicted, shall make up a statement of all the expenses incident to the prosecution, including those which are incident to any proceeding preliminary to conviction in another court, which are payable out of the treasury. This provision was adopted from that of the act of 1819, (1 Rev. Code 1819, p. 608, § 31,) amended by *705 the act of March 11, 1832, (Sess. Acts, p. 49, § 2,) and re-enacted at the revisal of the criminal code in 1848, chap. 23, § 12. (Sess. Acts 1847-8, p. 157.) The costs and expenses for which the convict’s estate was thus made liable, were those with which the commonwealth was chargeable, such as jail fees, charges for dieting, guards and transportation accruing before conviction, compensation to witnesses and jurors, fees to constables for arresting accused and summoning witnesses; but not fees to the officers of either court, the attorney for the commonwealth, the clerk and the sheriff. The act of 1848, before cited, § 18, expressly provided that the commonwealth should not be liable to any attorney, clerk or sheriff for his fees in any criminal prosecution, but that the same should be deemed to be included in the allowance made to such attorney, clerk or sheriff for public services, unless where otherwise provided by law. By the Code of 1849, p. 783, § 12, and p. 699, § 16, it is expressly provided that no fee to any attorney for the commonwealth, clerk, sheriff or sergeant shall be payable out of the treasury, except where expressly provided. At p. 702, § 29, it is provided that for services rendered the commonwealth in a civil case, the clerk shall be entitled to the same fees as would be charged for like services rendered to an individual, and for other public service he is to receive a stated sum to be allowed by the court. By § 30, on same page, compensation to the sheriff is provided for arresting a party charged with felony and conveying him to jail, also for the support of the prisoner and for guards. But no provision is made for the ordinary fees of the clerk or a sheriff in a case of felony, whether the prisoner be convicted or otherwise: For the § 16, at p. 707, providing for taxing fees of attorney, clerk and other officers of the court, only applies to prosecutions for misdemeanors, as expressly declared in the corres *706 ponding provision in the act of 1848, (Sess. Acts, p. 158, § 18,) or cases in which there is a judgment or decree on behalf of the commonwealth for costs; lerms inappropriate to a case of felony in which no judgment f°r costs is pronounced, and shown by all the antecedents of the existing provisions of the law on the subject, to be intended to apply to civil cases and misdemeanors only. I think therefore that in this case the attorney for the commonwealth, clerk and sergeant were not entitled to claim payment of fees out of the treasury, (such as were chargeable in civil cases, or in misdemeanors where the defendant was convicted, as distinguished from special allowances-made by the court;) and that the commonwealth not being chargeable with the same, they should not have been included by the clerk in his taxation of the costs for which execution was to issue.
A doubt has been suggested as to the jurisdiction of this court in this case, the subject matter of controversy being less than five hundred dollars in amount; and at first I thought it might be a matter of serious question. Further reflection has, however, satisfied me that the doubt is without any real foundation. I regard the collection of the costs as an incident to the sentence of the court in the exercise of its criminal jurisdiction. Had its jurisdiction been of that character alone, the execution must have issued from it and been returnable to it, and if .a forthcoming bond be given by it, award of execution must be granted. Every appeal from its judgment must be from what is done in the exercise of criminal jurisdiction, and of course comes to this court, (since the transfer to it of the appellate jurisdiction of the former General court,) without regard to the amount in controversy. The authority of the court to enforce the collection of costs in such a case derives some support from the practice of the former District courts of chancery, the *707 correctness of which, has never been questioned, to award execution of forthcoming bonds taken under process emanating from that, court, though the proceeding might seem to partake more of an action at law than a suit in equity.
For the reasons which I have endeavored to assign, I am of opinion to reverse the judgment of the Circuit court, and to proceed now to render judgment for the amount named in the forthcoming bond, after making the deductions herein before specified.
The other judges concurred in the opinion of Lee, J.
Judgment corrected.